## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MICHAEL SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-cv-02442-LKG |
| | ) | |
| v. | ) | Dated: August 23, 2023 |
| | ) | |
| YESCARE CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

USDC- GREENBELT
'23 AUG 23 PM 3:23

### MEMORANDUM OPINION

Self-represented plaintiff Michael Saunders, a state inmate currently confined at Eastern Correctional Institution in Westover, Maryland, filed the instant suit pursuant to 42 U.S.C. § 1983, against YesCare Corp., Dr. Mulugeta Akal, and Oge Vivian Nwankwo, RN.[1] *See* ECF No. 1.[2]  Construed liberally, Plaintiff's Complaint raises an Eighth Amendment claim for denial of medical care while he was housed in the Maryland Reception, Diagnostic and Classification Center ("MRDCC") in Baltimore, Maryland. *Id.*  He seeks monetary damages. *Id.* at 6.

Defendants have moved to dismiss the Complaint, or in the alternative, for summary judgment. ECF No. 17. The Court informed Plaintiff that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the failure to file a response in opposition to the Defendants' motion may result in dismissal of the Complaint. ECF No. 18. Plaintiff responded,[3] ECF No. 20, 22, and Defendants replied, ECF No. 24.

---

[1] The Clerk shall be directed to amend the docket to list the full and correct names of Defendants.

[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files (CM/ECF) system.

[3] To the extent Plaintiff raises new claims in his opposition response such as: his not being sent to the Jessup Regional Hospital after his hand surgery (ECF No. 20 at 1); his housing unit not being properly maintained such that he could not clean himself (ECF No. 20 at 3); not receiving recommended physical therapy (*id.*); Dr. Akal improperly instructing him to open and close his hand a week after surgery (*id.* at 9); staff improperly documenting his pain level (*id.* at 6-8); Nurse Nwankwo refusing to keep him on daytime wound care (*id.* at 14); Dr. Akal not providing proper medical care after an officer use of force (*id.* at 15); and Dr. Akal not having him moved to another jail despite Plaintiff's complaints about his safety (*id.* at 17-18); those claims are not properly before the Court and will not be considered in the

The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' Motion, construed as one for summary judgment, shall be **GRANTED.**

## Background

Plaintiff claims that on April 8, 2022, he was taken to see Dr. Ashok Krishnaswamy, a "hand doc". ECF No. 1 at 1. Dr. Krishnaswamy operated on Plaintiff's hand, placing a metal plate in Plaintiff's right hand with two metal pins. *Id.* The pins were to hold the small bones in place and Plaintiff was told by Dr. Krishnaswamy that once the pins were ready to be removed, Plaintiff would be returned to him for removal. *Id.*

Approximately two days later, Plaintiff complained to correctional officers regarding the location of his cell. ECF No. 1 at 1. Plaintiff also advised the officers and nurses who distributed medication on his tier that if felt as though the pins were going deeper into his hands. *Id.*

On an unspecified date, Plaintiff was taken to medical where he was advised by the nurse and Dr. Akal that they could not do anything about the pins going deeper into his hand because only the doctor who performed the operation could take any action. *Id.* at 1-2.

After a week, or so, the pins worked their way under Plaintiff's skin and could no longer be seen. ECF No. 1 at 2. Dr. Akal called Dr. Krishnaswamy about this development and after each call Dr. Akal prescribed Plaintiff medication. *Id.* Plaintiff states that he can no longer feel three fingers on his right hand. *Id.*

On June 1, 2022, Plaintiff was taken back to Dr. Krishnaswamy and the pins were removed. ECF No. 1 at 2.

On an unspecified date, before the pins were removed, Plaintiff was advised that the pins caused an infection in his hand and he was prescribed pain medication at night to help him sleep. ECF No. 1 at 2. Plaintiff asked Dr. Akal if the timing of his prescription could be switched

---

context of this case. *See Mylan Laboratories, Inc. v. Akzo, N. V.,*770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd,* 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998). *Woodbury v. Victory Van Lines,* 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

because it was putting him to sleep and impeding his ability to have the wound cleaned every day. *Id.* Dr. Akal made the change for a few days, but the nurses complained so the timing of his medication was switched back. *Id.* Plaintiff claims that this prevented him from having his infection cleaned. *Id.* He alleges that unidentified staff marked that he refused appointments to have his wound cleaned, but he alleges that he missed follow-up appointments due "to the people not taking [him]." *Id.* at 3.

As background to Plaintiff's medical issue, Defendants explain that on February 22, 2022, Plaintiff was received at Baltimore Central Booking and Intake Center ("BCBIC"). ECF No. 17-22 at 5.4 On March 13, 2022, Plaintiff was seen by a physician's assistant for urgent care after an altercation with another inmate. *Id.* at 11. Plaintiff complained of pain and swelling in his right hand. A consultation request was placed for follow up with an orthopedist due to Plaintiff's hand possibly being fractured. An urgent x-ray confirmed that Plaintiff had a fracture of the metacarpal bone on his right hand. *Id.* at 9.

The following day, Plaintiff saw Dr. Agonafir for an urgent visit. *Id.* at 4. Plaintiff presented with a swollen right hand, pain, and he expressed concern that his palm was a little dark and he had limited movement of his third and fourth fingers on his right hand. Plaintiff was using a sling and asked when he would be seen by an orthopedic surgeon. *Id.* Dr. Agonafir noted that a "stat" consult was made immediately, and custody reported that Plaintiff was a "flight risk" for emergency room transfer at that time. *Id.*

On March 15, 2022, orthopedist Dr. Manning evaluated Plaintiff. ECF No. 17-22 at 2. The x-ray confirmed the right hand fracture. Dr. Manning attempted a closed reduction and placed a new splint. He recommended ORIF[5] surgery as soon as possible. *Id.*

The next day, Plaintiff was transferred to MRDCC. ECF No. 17-21 at 8, 11. Dr. Akal saw Plaintiff on March 18, 2022, for the hand fracture. *Id.* at 8. He noted Plaintiff had seen the orthopedist who recommended a surgical procedure. Plaintiff had a right forearm/hand splint and was using a sling. Plaintiff stated that Tylenol #3 helped with pain. Dr. Akal continued Plaintiff's medication and advised him to use Naproxen for breakthrough pain. *Id.*

---

[5] ORIF stands for open reduction and internal fixation: a type of surgery used to stabilize and heal a broken bone. *See* https://www.webmd.com/a-to-z-guides/what-is-orif-surgery (last visited Aug. 22, 2023).

Dr. Krishnaswamy, an offsite orthopedic surgeon, evaluated Plaintiff on March 21, 2022. ECF No. 17-26 at 8-9. Examination showed deformity of the right fourth and fifth metacarpal joints with all movements tender and restricted. X-rays showed displaced fractures of the right fourth and fifth metacarpal base and dislocation of metacarpal-carpal joints. Dr. Krishnaswamy noted Plaintiff would require ORIF with a compression plate, K-wires, and cast as soon as possible. *Id.* Dr. Akal saw Plaintiff that same day for preoperative evaluation. ECF No. 17-20 at 16. Plaintiff also saw Oge Vivian Nwankwo, RN, after an unrelated altercation. He was treated and returned to custody. ECF No. 17-21 at 1.

Plaintiff underwent the ORIF surgery on April 8, 2022, conducted by Dr. Krishnaswamy. ECF No. 17-25 at 7-10. He returned to MRDCC the same day and saw NP Emelogu for a provider visit. ECF No. 17-19 at 6. Plaintiff had an order for Tramadol for pain relief, but it was not available. The nurse on duty referred Plaintiff for an alternative pain medication and he agreed to take Tylenol #3. He denied any pain at the time, and his hand was in a cast-splint and sling. *Id.*

Dr. Akal saw Plaintiff on April 15, 2022, for post-operative follow up. ECF No. 17-18 at 19. He complained of pain in his right hand. He did not have a fever. He could make a fist without loss of sensation and wiggle his fingers with good capillary refill. There were no signs of infection. The dressing was soiled and dirty and Plaintiff was not wearing the splint. *Id.* He reported removing it but promised to put it back on when he returned to his cell. Dr. Akal observed mild swelling in the area of the surgical site but there was no erythema or discharge. Two metal wires were visible. *Id.* Dr. Akal spoke with Dr. Krishnaswamy who recommended follow up in approximately two weeks. Dr. Akal advised Plaintiff to wear the splint at all times. He also adjusted Plaintiff's pain medication and prescribed amitriptyline and Extra Strength Tylenol. *Id.*

On April 22, 2022, Dr. Akal evaluated Plaintiff for a possible wound infection. ECF No. 17-18 at 14. Plaintiff reported discharge coming from the pin sites from his surgery. He did not have a fever and reported pain only upon moving his little finger. The suture site was clean, dry, and intact. Purulent discharge was observed from the two pin sites lateral to the incision. Mild swelling was also noted, but Plaintiff could move all fingers. Dr. Akal again discussed Plaintiff's case with Dr. Krishnaswamy, who advised taking a culture and starting the antibiotic

Bactrim. A wound culture was taken and Bactrim, for seven days, prescribed. Plaintiff was scheduled for a follow-up appointment with Dr. Krishnaswamy the following week. *Id.*

Dr. Akal again saw Plaintiff for follow up on April 29, 2022. ECF No. 17-18 at 5. Plaintiff complained of a burning sensation at the site of the pins in his hand. He did not have fever or chills and reported he was taking antibiotics. The surgical site was intact with no wound dehiscence noted. There was some discharge from one end of the main surgical site and one of the pins was visible through the skin as it had been since the surgery. The other pin was buried under the skin with some purulent discharge overlying the pin site. Plaintiff could move his fingers, but had swelling of the dorsum in the right hand. The culture of the wound grew two organisms: one sensitive to Bactrim, which Plaintiff was already taking; and another sensitive to Tetracycline. ECF No. 17-15 at 10; ECF No. 17-18 at 5. Plaintiff was provided a prescription for Doxycycline to treat the second bacteria. ECF No. 17-18 at 5. It was noted that Plaintiff was pending follow up with Dr. Krishnaswamy. *Id.*

Dr. Krishnaswamy next saw Plaintiff on May 3, 3022, for follow up. ECF No. 17-25 at 4. The right hand had a healing wound with sutures removed. It was noted that some pins had moved under the skin and a dressing and splint were applied. Dr. Krishnaswamy requested x-rays of the right hand and planned a follow up procedure to remove the wires. He also planned to remove the plate after three months. *Id.* That same day, Plaintiff saw Dr. Akal when he returned from his visit with Dr. Krishnaswamy. ECF No. 17-17 at 19. Dr. Akal noted Dr. Krishnaswamy requested x-rays of Plaintiff's hand, but he would need to be sent out for those. Dr. Akal examined Plaintiff's wound and saw no discharge and noted the wound appeared to be healing well. One pin was visible, as it had been since the surgery, but the second pin had moved under the skin. Dr. Akal ordered daily wound care and advised Plaintiff to finish his antibiotics and always wear his splint. *Id.* That same day, Dr. Akal ordered the requested x-rays of Plaintiff's hand. ECF No. 17-18 at 4.

The x-ray of Plaintiff's right hand was taken on May 4, 2022. ECF No. 17-25 at 2. No acute fracture, dislocation, or subluxation was observed. It was noted that there had been an interval ORIF with interval improvement in alignment of the fourth and fifth metacarpals with intact hardware. The x-ray showed stable post-operative changes. *Id.*

Dr. Akal again examined Plaintiff on May 6, 2022. ECF No. 17-17 at 15. Plaintiff did not have any complaints: he had finished his antibiotics and was receiving daily wound care.

The x-ray report was reviewed with him, and it was explained that he was showing stable post-operative changes. *Id.* Dr. Akal ordered continued wound care until the wound was fully healed. *Id.* It was also noted that Dr. Krishnaswamy had received the x-ray results and would send a note with recommendations as to next step. *Id.*

Dr. Krishnaswamy next examined Plaintiff on May 12, 2022, for follow up. ECF No. 17-25 at 1. Plaintiff reported pain in his right hand. Examination showed a healing wound and that one pin had moved deeper under the skin. Dr. Krishnaswamy noted that Plaintiff would need removal of the pins under sedation in two to three weeks. He also planned to remove the plate two months after the fractures had healed. *Id.*

On May 20, 2022, Dr. Akal again examined Plaintiff. ECF No. 17-14 at 17. Plaintiff complained that he had run out of his pain medication and that the pins in his hand were coming out. *Id.* Examination showed that the pin sites on the dorsum of the right hand had opened and the pin that had been buried under the skin was now exposed. There was no discharge or erythema. The wound was cleaned and a dressing applied. *Id.* Dr. Akal contacted Dr. Krishnaswamy who directed that Plaintiff be sent to him early the following week for wire removal. *Id.* Dr. Akal submitted a transport order. *Id.* at 18.

Plaintiff saw Dr. Krishnaswamy on May 23, 2022 and one of the K-wires was pulled out, but the remaining pin had to be removed under sedation. ECF No. 17-2, ¶ 25. Dr. Akal saw Plaintiff the following day. Plaintiff reported he was satisfied with the procedure the preceding day but had some pain. ECF No. 17-14 at 10. Dr. Akal directed that pre-operative labs be drawn and supplemented Plaintiff's pain medication with Tylenol #3 twice daily. *Id.* Dr. Akal next saw Plaintiff on May 27, 2022, for a pre-operation evaluation for removal of the remaining K-wire. ECF No. 17-13 at 18. Plaintiff's only complaint was of right hand pain. Plaintiff was approved for the procedure. *Id.*; ECF No. 17-14 at 1.

On June 1, 2022, Dr. Krishnaswamy operated on Plaintiff to remove the K-wire from under the skin. ECF No. 17-13 at 11; ECF No. 17-24 at 17. The fracture at the base of the right fourth and fifth metacarpal was stabilized and the plate and screw of the right fourth metacarpal was described as in good condition. ECF No. 17-24 at 17-18.

Dr. Akal examined Plaintiff the following day. ECF No. 17-13 at 6. Plaintiff reported he felt good but had more pain at night. He was wearing a splint on his right wrist. He was able to wiggle all fingers on his right hand and make a fist. Capillary refill in the right fingers was

described as full.  Dr. Akal increased Plaintiff's Tylenol #3 to two pills at bedtime to help with nighttime pain.  Plaintiff stated that he had a sling in his cell and Dr. Akal instructed him to use it when walking.  He also continued the order for daily wound care.  *Id.*

Dr. Akal next saw Plaintiff on June 14, 2022, for chronic care.  ECF No. 17-11 at 10. Plaintiff did not have any complaints and reported that the surgical site had closed, and he did not need additional wound care.  He did not report any limitations using his right hand but did report some numbness along the lateral aspect of the right finger.  *Id.*  Dr. Akal updated Plaintiff's chart on June 17, 2020, to reflect that he had notified Dr. Krishnaswamy that the would had healed and Dr. Krishnaswamy recommended getting another x-ray and sending Plaintiff back to him for follow up in four weeks.  ECF No. 17-10 at 1-4.  Dr. Akal ordered the x-ray that same day.  *Id.* at 5.

Dr. Akal saw Plaintiff on July 11, 2022, for chronic care.  ECF No. 17-7 at 13.  Plaintiff's orthopedic follow up remained pending.  He reported pain in his right hand.  He asked for a letter for his lawyer stating that he had missed some offsite follow ups due to transportation issues, but Dr. Akal advised him to request that report from custody instead of medical. Plaintiff became angry and cursed and walked out of the examination room threatening to sue Dr. Akal and as such no examination occurred.  *Id.*

On July 19, 2022, Dr. Akal entered a note in Plaintiff's record that he had ordered x-rays per Dr. Krishnaswamy's advice, and the images would be forwarded to Dr. Krishnaswamy.  ECF No. 17-7 at 9.  Dr. Akal also noted that according to custody, Plaintiff refused to go out for his outside orthopedic appointment earlier that day.  *Id.*

On July 22, 2022, Dr. Akal saw Plaintiff in sick call due to Plaintiff's sick call slip which stated he had not refused to go to his orthopedic appointment.  ECF No. 17-7 at 5.  During the visit, Plaintiff reiterated that he had not refused to go to his appointment and that officers falsified his statement.  *Id.*  Dr. Akal discussed Plaintiff's case with Dr. Krishnaswamy who advised rescheduling Plaintiff to see him.  Dr. Akal's examination of Plaintiff was unremarkable except for the healed scar on the dorsum of his right hand.  He had no limitation of hand/finger mobility.  Dr. Akal noted Plaintiff would be rescheduled for the orthopedic follow up.  *Id.*

Plaintiff was transferred from MRDCC to Chesapeake Detention Center on August 16, 2022, and as such, Dr. Akal had no further involvement in Plaintiff's care.  ECF No. 17-2, ¶ 34; ECF No. 17-6 at 12.

Dr. Krishnaswamy examined Plaintiff for follow-up care on September 7, 2022.  Dr. Krishnaswamy recommended removal of the plate, excision of scar tissue, releasing a tendon from adhesion, tenolysis, and revision of keloid scar.  ECF No. 17-6 at 1.  He was approved for the surgery on September 14, 2022. ECF No. 17-5 at 15.  On September 30, 2022, Plaintiff refused the surgery stating that he did not want it because he had complications from the previous surgery. *Id.* at 8.

Dr. Akal avers that he did not ignore Plaintiff's medical needs. ECF No. 17-2 ¶ 35.  Dr. Akal explains that wound care is handled by nurses per the nursing protocol.  *Id.*  Dr. Akal prescribed and adjusted pain medication and antibiotics as needed.  He referred Plaintiff to the orthopedist and followed the orthopedist's recommendations.  He ordered diagnostic testing and wound care.  *Id.*

## Standard of Review

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions or conclusory statements do not suffice.  *Id.*  A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).  A self-represented party's complaint must be construed liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure."  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF No. 14.  Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.2d 431, 436-37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149

8

F.3d 253, 260-61 (4th Cir. 1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants' Motion is titled as a motion to dismiss or, alternatively, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and rule on that basis.  Thus, the Court will review Plaintiff's claims under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).  Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

### Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 842. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level

of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at *4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)). Additionally, where the seriousness of the injury is not apparent, a delay in treatment does not violate the Eighth Amendment. *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

Here, even if Plaintiff has shown that, objectively, he was suffering from a serious medical need, he fails to satisfy the subjective prong as he has not shown that Defendants failed to provide the necessary care. After Plaintiff injured his hand in a fight, x-rays were taken, he was provided analgesic pain medication, and was referred to an orthopedic surgeon. Plaintiff was provided surgery, follow up care, analgesic pain medication, antibiotics, wound care, and his onsite providers consulted with the surgeon as to the appropriate course of action regarding follow up care. Plaintiff has not shown deliberate indifference on the part of either of the named Defendants.

In his response opposing Defendants' Motion, Plaintiff disputes that the pins were visible on the skin after his surgery. ECF No. 20 at 3. He claims that the pins were intended to be sticking out of hand, about an inch, and that both pins ended up going under his skin. *Id.* at 3-4. He also alleges that Dr. Akal could have sent him to the emergency room at any time to have the pins removed, but failed to do so. *Id.* at 5. Plaintiff appears to fault Dr. Akal for the pins becoming embedded in his hand, but the record evidence demonstrates that Dr. Akal reported Plaintiff's status to Dr. Krishnaswamy on a number of occasions, and on each occasion followed Dr. Krishnaswamy's advice. ECF No. 17-2, ¶¶ 16-17, 24, 35. To be clear, Defendants do not deny that Plaintiff suffered a post-surgery infection and that the pins placed by Dr. Krishnaswamy moved and required further surgical intervention. Plaintiff, however, has marshalled no evidence to support his unverified assertion that Defendants were deliberately

11

indifferent to his serious medical needs. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes"); *see also* Fed. R. Civ. P. 56(c)(1)(A). Meanwhile, Defendants have presented exhibits and an affidavit to show that they responded reasonably to Plaintiff's broken hand by referring him for diagnostic testing, treatment by an orthopedic surgeon, wound care, and analgesic medication which was adjusted throughout Plaintiff's recovery to address his reports of pain. Further, Dr. Akal relied on the written and verbal recommendations of Dr. Krishnaswamy, the orthopedic surgeon, as to Plaintiff's treatment. On this record, Plaintiff has not shown that Defendants were deliberately indifferent to a serious medical need. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims against them.[6]

## Conclusion

For the foregoing reasons, Defendants' Motion, construed as one for summary judgment, is granted. A separate Order follows.

August 23, 2023
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[6] To the extent Plaintiff raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).